IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KENNETH WILLIAMS,
      Plaintiff,

vs.                                   Case No. 3:04cv169/RV/EMT

JO ANNE B. BARNHART,
Commissioner of the
Social Security Administration,
      Defendant.

_____/

## REPORT AND RECOMMENDATION

      This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act and related statutes, 42 U.S.C. § 401, *et seq*.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Act.

      Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I.      PROCEDURAL HISTORY

      Plaintiff filed an application for DIB on March 18, 2002, alleging an onset of disability of May 18, 2001 (Tr. 53-55).[1]  The application was denied initially and on reconsideration (Tr. 31-33, 36-38).  On April 8, 2003, Plaintiff requested a hearing before an ALJ (Tr. 39).  A hearing was

---

[1]All references to "Tr." refer to the Transcript of Social Security Administration Record filed on June 30, 2004 (Doc. 5).

held on October 8, 2003 (Tr. 212-39), at which Plaintiff was represented by counsel and testified (Tr. 223-38). No vocational expert ("VE") testified at Plaintiff's hearing; instead, the ALJ relied upon the "grids" (i.e., the Medical-Vocational Guidelines, Rule 201.27, Table No. 2 of Appendix 2, Subpart P, Regulation No. 4) (*see* Tr. 212-39) in finding that Plaintiff was not disabled and could perform work existing in significant numbers in the national economy (Tr. 20). On November 24, 2003, the ALJ rendered a decision denying Plaintiff's application for DIB (Tr. 13-21). The Appeals Council denied review (Tr. 5-7). The Appeals Council's action made the ALJ's decision the final decision of the Commissioner, and therefore subject to review in this court. Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998). Plaintiff's appeal from the final decision of the Commissioner is now before this court.

II.     FINDINGS OF THE ALJ

        On November 24, 2003, the ALJ made several findings relative to the issues raised in this appeal. The ALJ found that: (1) Plaintiff meets the non-disability requirements for a period of disability and DIB set forth in Section 216(i) of the Act and is insured for benefits at least through the date of the decision; (2) Plaintiff has not engaged in substantial gainful activity since his alleged onset date; (3) Plaintiff has severe impairments, but does not have an impairment or combination of impairments listed in, or medically equal to one listed in 20 C.F.R. Part 404; Subpart P, Appendix 1; (4) Plaintiff is unable to perform his past relevant work as a machine operator, but retains the residual functional capacity ("RFC") to perform the full range of sedentary work; and, (5) based upon Plaintiff's age, education, and work experience, the grids direct a finding of "not disabled." Thus, Plaintiff was not under a "disability," as defined in the Act, at any time through the date of the decision (20 C.F.R. § 404.1520(f)) (Tr. 20-21).

III.    STANDARD OF REVIEW

        Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) (stating "[t]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied"); *see also* Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987); Lewis v. Callahan, 125 F.3d 1436 (11th Cir. 1997). The

Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  Substantial evidence is more than a scintilla, but not a preponderance, i.e., "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); Lewis, 125 F.3d at 1439.  The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a disability claim in five steps.  The steps are:

1.      If the claimant is performing substantial gainful activity, he is not disabled.

2.      If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3.      If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.

5.      Even if the claimant's impairments prevent him from performing his past relevant work, if

other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work.  20 C.F.R. §§ 404.1512, 416.912.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.    PLAINTIFF'S MEDICAL AND PERSONAL HISTORY

A.    Personal History

Plaintiff was born in 1963 and has a high school education (Tr. 53, 68, 224).  He testified at his hearing before the ALJ as follows:  He became disabled on May 18, 2001 when he suffered an on-the-job injury[2] (Tr. 229).  Plaintiff was working at a sawmill when injured, but had previously worked as a scale operator and chicken hanger in a poultry processing plant (Tr. 230-31).  Plaintiff was prescribed a cane in July 2001 and has used it since that time, although he mainly uses it outside (Tr. 223).  He came to the hearing "assisted by the use of [the] cane" (Tr. 222).  Plaintiff testified that he has a hard time dressing, bathing (he sometimes needs to bathe at the sink) and grooming, and often needs his wife's assistance (Tr. 232).  His children help him tie his shoes (id.).  He has to lie down frequently because of pain and cannot do things with his children that he used to do (id.). Plaintiff spends most of his time at his desk reading and studying (Tr. 233).  He has good days and bad days (id.).  He does not grocery shop, do yard work or cook, but sometimes helps out with the dishes and vacuuming (id.).  Plaintiff does not drive because he does not have a license (Tr. 225). He therefore had someone drive him to the hearing, which took about one and a half hours, and no stops were made during the trip (Tr. 225-26).  Plaintiff lives in a mobile home, is married, and has two children at home, aged twelve and sixteen (Tr. 226).  Plaintiff is 5'10" and weighs 230 pounds,

---

[2]Medical records reveal that an iron pin was driven into the joint of Plaintiff's left knee (Tr. 122).

which is greater than his usual weight because he has "mostly just been sitting around and unable to do nothing" (Tr. 227).  Plaintiff takes numerous medications for back and knee pain, as well as medication for high blood pressure and acid reflux (Tr. 227-28, 109), although Plaintiff cannot afford to take the medications as they have been prescribed (Tr. 228).  Thus, Plaintiff tries to "stand the pain" as long as he can before taking any medication (*id.*).  The medications make him dizzy and "heavy-headed" (Tr. 235).  For the most part, Plaintiff lies down to relieve pain and does so for about half of the day (Tr. 236).  His pain is aggravated by prolonged periods of walking, sitting, or standing (*id.*).  He has constant lower back pain, which is worsening, and sometimes runs down both legs and up his back (Tr. 237).  For all these reasons, Plaintiff explained, he is "unable to return to the kind of work [he has] done before" (Tr. 238).

     B.     Relevant Medical History

     Plaintiff injured his left knee while working in July 2001.  An MRI taken on August 9, 2001 showed minimal joint effusion and small fluid collection along the anterior medial aspect, which was likely related to bursal fluid collection or inflammation (Tr. 15, 111).  The MRI also revealed intact medial and lateral meniscus, but a possible small tear of the patellar tendon or possible chronic tendinitis (Tr. 111). Plaintiff underwent knee surgery in November 2001 (Tr. 111, 122).  He saw Neurologist Diana C. Reed, M.D., on January 2, 2002, and advised her that he had developed severe back pain following the surgery.  Plaintiff did not know how or why the back pain developed and thought it might be due to the way he walked with crutches (Tr. 122).  He advised that over-the-counter medication did not provide significant relief (*id.*).  Dr. Reed conducted a physical examination which revealed "quite a bit" of swelling in the left knee, but none in area of the lumbar spine, although evidence of muscle spasm was present (*id.*).  Plaintiff had basically good strength of his lower extremities except for limitation of knee flexion due to pain, and was unable to ambulate without the use of crutches (Tr. 122-23).  Dr. Reed noted that Plaintiff's lumbar spine x-rays were negative, and did not find any evidence of radiculopathy (Tr. 123).  On January 17, 2002, Plaintiff reported to Dr. Reed that his symptoms of low back and left knee pain were improving until about nine days earlier when he had been exercising quite extensively and doing physical therapy, and perhaps "over-did-it" (Tr. 121).  Plaintiff returned to Dr. Reed on February 14, 2002.  He continued to complain of back and knee pain, neither of which was alleviated by

physical therapy or medication (Tr. 120).  At that time Dr. Reed noted good strength in Plaintiff's legs, as well as normal reflexes, although Plaintiff had decreased sensation around the knee and his spine was still tender to palpation (*id.*).  A second MRI was taken of Plaintiff's left knee on February 26, 2002, which revealed "no evidence of a meniscal tear or significant degeneration," as well as intact ligaments (Tr. 112).  It further revealed "severe deformity of the proximal portion of the patellar tendon," which appeared to be from an injury that had not completely healed (Tr. 113).  It also showed mild patella alta and evidence of some mild chondromalacia (erosion of cartilage) (*id.*).

An MRI of Plaintiff's lumbar spine on April 5, 2002, showed normal disc height and signal intensity throughout the lumbar spine, with no signs of lumbar compression fracture or subluxations (Tr. 116).  It did show extensive lumbar epidural lipomatosis which produced a typical compression of the dural sac and root outlet zones most predominantly at the L4-5 and L5-S1 levels, and mildly compressed in the dural sac at L3-4 (*id.*).  Mild facet joint degenerative changes were present at L4-5 resulting in mild right foraminal stenosis, but no other significant foraminal stenosis was present (Tr. 117).  On April 17, 2002, Dr. Reed noted that Plaintiff had "pretty good strength in both upper and lower extremities," normal reflexes, decreased strength in his gastrocnemius (calf muscle),[3] an antalgic gait (a shortened gait on the affected side), and difficulty getting up on his toes with the left foot (Tr. 115).  He was assessed with chronic pain syndrome, lumbar epidural lipomatosis with evidence of left S1 radiculopathy, and left peroneal (of or pertaining to the fibula) neuropathy (*id.*).  Dr. Reed noted that "conservative therapy is not helping him and I have not made much headway in terms of improving his symptoms or functional capacity" (*id.*).  Plaintiff followed up with Dr. Reed on April 29, 2002.  At that time she noted that Plaintiff's knee was very stiff and tender with a decreased range of motion and that Plaintiff appeared to be in moderately severe distress, although he did not ask for any refills of his pain medication (Tr. 114).  At this point, Dr. Reed was not recommending surgery.  Instead, she thought that Plaintiff would benefit from an epidural steroid injection (*id.*).  Plaintiff was supposed to see Dr. Syverson for the recommended injection, but as of April 29th,  Plaintiff had not obtained an injection because his worker's

---

[3]Unless otherwise noted, information explaining medical terminology, contained in parentheticals following the terminology, was obtained from http://www.mydr.com.au/tools/Dictionary.asp, an online medical dictionary.

compensation had not approved the treatment.  No additional treatment records from Dr. Reed are in the file; nor does the file contain any treatment records from Dr. Syverson.  However, it appears that Plaintiff did see Dr. Syverson, as recommended by Dr. Reed, because the Social Security Administration wrote Dr. Syverson in an attempt to obtain Plaintiff's medical records.  In response, Dr. Syverson's office wrote, "he has not seen Mr. Williams since 6/2002 " (*see* Tr. 124).

During a consultative psychiatric evaluation on October 12, 2002, Dr. Peter Szmurlo noted that Plaintiff moved very slowly with the assistance of a cane, but did not exhibit any excessive pain behaviors (Tr. 129). Plaintiff advised Dr. Szmurlo that he was depressed and that he sometimes became so anxious he chewed on his hands (Tr. 128).  Dr. Szmurlo noted that Plaintiff had abrasions on the knuckles of both hands, which Plaintiff explained were from biting them when he experienced poorly controlled pain (Tr. 129).  Plaintiff stated his pain could be as high as a nine on a ten-point scale, but averaged about a six or seven on that same scale (Tr. 128).  He could not bend to tie his shoes and his wife and children had to help him with most household duties (*id.*).

Plaintiff was seen by Reddoch E. Williams III, M.D., on October 31, 2002, for a consultative disability examination.  Dr. Williams noted that Plaintiff ambulated under his own power without any difficulty and brought a cane to the examination which, in Dr. Williams' opinion, was not necessary (Tr. 145, 147).  Plaintiff stated he could sit for only thirty minutes, after which he must stand and move about for fifteen minutes (Tr. 145).  Plaintiff had full and normal ranges of motion of all joints, normal straight leg raising, good peripheral pulses, and no clubbing, cyanosis, or edema (Tr.  146).  Plaintiff was able to stand on his heels and toes separately without difficulty, squat to 90 degrees flexion and arise, and dress and undress himself without difficulty (*id.*).  Dr. Williams also noted that Plaintiff was able to mount and dismount the examination table without difficulty (*id.*). There was no gross sensory or motor loss in any part of his body (*id.*).  Gait was normal, and muscle grip strength and dexterity of the arms and hands was 5/5 (Tr. 147).  In conclusion, Dr. Williams stated, "[Plaintiff] would be expected to have normal work related ability regarding sitting, handling objects, hearing, speaking, and traveling.  His complaints of left knee and low back pain would raise questions regarding his work ability of standing, walking, lifting, and carrying" (*id.*).

Finally, the file reflects that Plaintiff was a patient of Maxwell G. Carroll, M.D., from 1997 to September 2003 (*see* Tr. 178-202).  Apparently, each time Plaintiff visited Dr. Carroll, only

handwritten treatment notes were created on a preprinted, relatively small form.  They are the only treatment records from Dr. Carroll in the file and they are difficult to decipher.  Although Plaintiff repeatedly refers to Dr. Carroll as Plaintiff's "long time treating family physician" (*see, e.g.*, Doc. 7 at 6), Plaintiff does not explain the nature of Dr. Carroll's treatment, make any reference to the treatment notes in the file, nor offer a summary of the notes.  Plaintiff does, however, discuss the *Clinical Assessment of Pain* and *Physical Capacities Evaluation* forms completed by Dr. Carroll on September 19, 2003 (*see* Tr. 206-09).  Dr. Carroll selected the following options on the pain form: "pain is present to such an extent as to be distracting to adequate performance of daily activities or work"; pain is increased by physical activity, such as walking or standing, "to such an extent that bed rest and/or medication is necessary"; and, "drug side effects can be expected to limit effectiveness due to distraction, inattention, drowsiness, forgetfulness, etc." (Tr. 206).  Additionally, Dr. Carroll opined that Plaintiff could never bend, squat, climb, crawl or reach, although Plaintiff's pain did not pose any restriction of activities involving being around machinery, driving automotive equipment, or being around heights or vibration (Tr. 207).  Dr. Carroll indicated that Plaintiff would need to recline or lie down several times a day, but could occasionally lift or carry less than five pounds, although he could not use his hands or feet for repetitive actions (Tr. 208).  On the physical capacities form, Dr. Carroll indicated that Plaintiff could sit for a maximum of thirty (30) minutes at any one time, but also stated that Plaintiff could only sit for a total of thirty (30) minutes in an eight-hour day (Tr. 204), and that Plaintiff could stand or walk for a maximum of thirty (30) minutes in an eight-hour day (*id.*).

        C.       Other Information Within Plaintiff's Claim File

     A *Personal Pain/Fatigue Questionnaire* was completed by Plaintiff on April 20, 2002, in which he described "pain all over" below his waistline, as well as pain that "feels like pins are sticking in [his] back," preventing rest, activities with his family, and the ability to walk very far, sit, stand, or personally groom himself (Tr. 71-72).  He also described serious knee pain and, in general, states that his pain exists "every minute, second, hour of the day" (Tr. 71).  He further stated, "I'm in so much pain it [causes] my nerve to go bad.  I eat my skin off my hands and my fingernails and knuc[kl]es every day . . . until my hands start to bleed.  I cannot help it . . . I just can't stop because I hurt all the time.  I got to have something to keep my mind off the pain" (*id.*).

He claimed that medication did not help the pain and that he no longer feels any side effects from the medication because it no longer works (Tr. 72).  Plaintiff completed a second questionnaire in January 2003 and reported, generally, the same level of pain (*see* Tr. 80-82).

A *Psychiatric Review Technique* ("PRT") form was completed on October 30, 2002, by T. Wayne Conger, Ph.D. (*see* Tr. 131-44).  Dr. Conger concluded that Plaintiff had no medically determinable mental impairments (Tr. 131, 143) and stated that "any emotional reactions [Plaintiff] experiences are felt to be withing normal limits and there are no symptoms severe enough to support a mental diagnosis" (Tr. 143).  A second PRT form was completed by Eric D. Martin, Ph.D., on March 13, 2003 (*see* Tr. 164-77).  Dr. Martin concluded that Plaintiff did not have any severe impairments (Tr. 164).  He evaluated Plaintiff's psychiatric condition under Section 12.07 of 20 C.F.R. Part 404, Subpart P, Appendix 1 (*Somatoform Disorders*) and found that Plaintiff suffered from a medically determinable impairment; namely, pain disorder with associated psychological factors and general medical condition, but that this impairment did not satisfy the diagnostic criteria necessary to qualify as disabled under section 12.07 (Tr. 170).  Dr. Martin opined that this impairment caused no restrictions of activities of daily living, nor any extended episodes of decompensation, and only mild difficulties in maintaining social functioning, concentration, persistence or pace (Tr. 174).

A *Physical Residual Functional Capacity Assessment* form was completed by a DDS physician (name unknown) on November 8, 2002 (*see* Tr. 148-55).  The doctor concluded that Plaintiff could occasionally[4] lift and/or carry (including upward pulling) 20 pounds; frequently[5] lift and/or carry (including upward pulling) 10 pounds; stand or walk (with normal breaks) for about two hours in an eight-hour workday; and sit (with normal breaks) for about six hours in an eight-hour workday.  He/she also found Plaintiff had the unlimited ability, subject to the above restrictions, to push and/or pull (including operation of hand and/or foot controls).  He/she believed Plaintiff had occasional postural limitations (i.e., in his ability to climb, balance, stoop, kneel, crouch or crawl), but no manipulative limitations (to reach, handle, finger or feel), nor any visual,

---

[4]"Occasionally" means occurring from very little up to 1/3rd of an 8-hour workday (cumulative, not continuous).

[5]"Frequently" means occurring 1/3rd to 2/3rds of an an 8-hour workday (cumulative, not continuous).

communicative or environmental limitations (Tr. 148-52).  Although the handwriting is hard to decipher, it appears that the doctor's findings were based, at least in part, upon a review of the MRIs, as well as Plaintiff's ability to "get on/off [the] exam table" (Tr. 150) and Plaintiff's use of a cane "which appears unnecessary" (Tr. 153).

Another *Physical Residual Functional Capacity Assessment* form was completed by Dr. Edward W. Holifield, M.D. on March 13, 2003 (*see* Tr. 156-63).  Dr. Holifield concluded that Plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for about two hours in an eight-hour workday; and sit for about six hours in an eight-hour workday.  He also found Plaintiff had the unlimited ability, subject to the above restrictions, to push and/or pull.  He believed Plaintiff had occasional postural limitations, but no manipulative visual, communicative or environmental limitations (Tr. 157-60).  It appears that Dr. Holifield based his findings, at least in part, upon a review of Plaintiff's MRIs and x-rays, as well as Plaintiff's ability to get on and off the exam table (Tr. 157-58) and Plaintiff's use of "a cane which appears unnecessary" (Tr. 161).  Additionally, Dr. Holifield noted Plaintiff's ability to "ambulate short distances" without the use of an assistive device (Tr. 158).

V.     DISCUSSION

Plaintiff contends that the ALJ: (1) erroneously discredited the opinions of two treating physicians; (2) failed to apply the Eleventh Circuit's pain standard; and, (3) improperly relied upon the grids instead of obtaining VE testimony.

A.     Treating Physician's Opinion

Plaintiff contends the ALJ erroneously discredited the medical opinions of Doctors Carroll and Reed, Plaintiff's treating physicians.  Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See* Lewis v. Callahan, 125 F.3d 1436, 1439 - 1441 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); Sabo v. Commissioner of Social Security,  955 F.Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527 (d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527 (d)(2).  The ALJ may discount a treating

physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  *See* <u>Edwards</u>, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See* <u>Wheeler v. Heckler</u>, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also* <u>Schnor v. Bowen</u>, 816 F.2d 578, 582 (11th Cir. 1987).  When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; and 6) other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527 (d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See* <u>Wilson v. Heckler</u>, 734 F.2d 513, 518 (11th Cir.1984); *see also* 20 C.F.R. § 404.1527 (d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).   The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors, because that ultimate determination is the providence of the Commissioner.  20 C.F.R. § 404.1527 (e).

1.      Dr. Maxwell Carroll, M.D.

The ALJ specifically considered Dr. Carroll's opinions contained on the forms discussed above, and properly found them to be worthy of no weight or no "significant evidentiary weight" (*see* Tr. 18).  The forms filled out by Dr. Carroll are preprinted and offer multiple choice answers or other, similar-type answers.  The answers contained on the forms are unexplained and are accompanied by no clinical or objective findings (*see* Tr. 204-09).  Additionally, Dr. Carroll's

treatment notes do not appear to support the conclusions contained on the forms.[6]  A treating physician's opinion may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory (*see* 20 C.F.R. § 404.1527(d)), as are Dr. Carroll's opinions.  A brief and conclusory statement that is not supported by medical findings, even if made by a treating physician, is not persuasive evidence of disability. *See* Johns v. Bowen, 821 F.2d 551, 555 (11th Cir. 1987).

Furthermore, the restrictions set forth by Dr. Carroll are inconsistent with the overall record of medical evidence, including the opinions contained on both *Physical Residual Functional Capacity Assessment* forms (such as Plaintiff's ability to lift and/or carry 10 to 20 pounds, stand or walk two hours in a workday, and sit six hours in a workday), as well as the actual objective and clinical findings of consulting physician Dr. Williams, made less than one year prior to Plaintiff's hearing (he found that Plaintiff had full ranges of motion; the ability to stand on his heels and toes without difficulty; the ability to squat, dress and undress, mount and dismount the exam table; no gross sensory or motor loss to any part of the body; 5/5 muscle grip strength; dexterity of the arms and hands; and no need for or use of an assistive device) (Tr. 146-47).  These opinions and findings are consistent with the overall record of evidence, consistent with the ALJ's RFC determination, and are contrary to the restrictive limitations set forth by Dr. Carroll.

Moreover, Dr. Carroll's forms are internally inconsistent.  First, the physical capacities form indicates that Plaintiff can sit for a maximum total of only thirty (30) minutes during an eight-hour day, yet the same form indicates that Plaintiff can sit for that same amount of time at any one time during the day  (Tr. 204).  Second, the pain form indicates that Plaintiff cannot bend, squat, climb, crawl, reach, use his feet for repetitive movement, or use his hands for any repetitive movement, but also indicates that Plaintiff is capable of driving automotive equipment.

The ALJ noted Plaintiff's testimony that he was able to sit for the two-hour drive to the administrative hearing without stopping (Tr. 18, 255).[7]  This, too, contradicts the opinions of Dr. Carroll.  It is the physician's evaluation of a Plaintiff's condition and the medical consequences

---

[6]Notably, neither the ALJ, nor the Plaintiff, nor the Defendant have discussed the contents of the treatment notes, presumably because they are illegible or inconclusive.

[7]Plaintiff actually testified that the drive took about an hour and a half (*see* Tr. 225-26), but this does not change the fact that Plaintiff was able to sit for a much longer time than that estimated by Dr. Carroll.

thereof, "not their opinions of the legal consequences of his condition" on which the court must focus. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). The question of whether a claimant is disabled (i.e., unable to work within the strictures of the Social Security Act) is reserved to the Commissioner, not to a physician. *See* 20 C.F.R. § 404.1503. For the foregoing reasons, the ALJ properly discounted the opinion of Dr. Carroll.

2.      Neurologist Diana Reed, M.D.

Although it is a closer call regarding Dr. Reed, this court concludes that the ALJ did not improperly discount her opinion. The file reflects that Plaintiff saw Dr. Reed on five occasions, over the span of approximately three to four months (January 2, 2002; January 17, 2002; February 14, 2002; April 17, 2002; and, April 29, 2002). The ALJ acknowledged Dr. Reed's treatment of Plaintiff and correctly detailed her treatment notes, as well as the results of the MRIs upon which Dr. Reed relied (*see* Tr. 15-16). Plaintiff argues, however, that the ALJ did nothing more than this and rejected her opinion concerning the "extent of [Plaintiff's] knee and back pain" (*see* Doc. 7 at 12). It is not evident to this court, however, that any opinion of Dr. Reed was specifically rejected by the ALJ. First, although Dr. Reed noted Plaintiff's complaints of pain, she also noted that Plaintiff had good strength of his lower extremities, negative lumbar spine x-rays, normal reflexes, and only mild or no foraminal stenosis. Second, her records reflect a decrease in Plaintiff's pain medication over the course of her treatment (for example, on January 2, 2002, Plaintiff was prescribed "Lortab 10 # 20, 1 q4h prn"[8] (Tr. 123), but on April 17 and April 29, 2002, Plaintiff was prescribed "Lortab 5 about bid"[9] (Tr. 114, 115)). Third, the ALJ correctly noted Dr. Reed's belief that Plaintiff's knee problem was out of her area of expertise (*see* Tr. 15-16, 123). Fourth, Dr. Reed recommended follow-up treatment with Dr. Syverson and it appears that Plaintiff indeed obtained this treatment. Although Dr. Reed noted the lack of significant "headway in terms of improving [Plaintiff's] symptoms or functional capacity," as well as Plaintiff's apparent distress, her notations were made in April 2002 and she never saw Plaintiff after that date, nor learned the outcome of his

_____

[8]It is believed that this notation directed Plaintiff to take one, higher-strength (10 mg of hydrocodone) tablet every four hours as needed

[9]It is believed that this notation directed Plaintiff to take one, lower-strength (5 mg of hydrocodone) tablet twice daily.

appointment(s) with Dr. Syverson.  Additionally, although Plaintiff experienced pain during Dr. Reed's treatment and was unable to walk without crutches at that time, in October 2002 he walked without an assistive device and was able to perform physical tasks in the presence of Dr. Williams. In considering the record as a whole, this court concludes that Dr. Reed's treatment records are not inconsistent (unlike Dr. Carroll's) with the ALJ's ultimate conclusion that Plaintiff was capable of performing sedentary work.

Although evidence in the record arguably exists to support a decision contrary to that reached by the ALJ, the court is limited in its inquiry and is not empowered to reweigh the evidence.  *See generally* Martin, 894 F.2d at 1529 (the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner); Sewell, 792 F.2d at 1067 (even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence).  For the foregoing reasons, the undersigned concludes that the ALJ properly considered Dr. Reed's opinion.

B.       Discrediting of Plaintiff's Testimony

Plaintiff contends the ALJ failed to apply the Eleventh Circuit's three-part pain standard and improperly discredited his testimony concerning disabling pain.  As this court is well aware, pain is treated by the Regulations as a symptom of disability.  Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms."  *Accord* 20 C.F.R. § 416.929.  In Hand v. Heckler, 761 F.2d 1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following additional pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

The Eleventh Circuit continues to follow the Hand test.  Wilson v. Barnhart, 284 F.3d 1219 (11th Cir. 2002); Kelley v. Apfel, 173 F.3d 814 (11th Cir. 1999); Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991); Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991); Martin v. Railroad Retirement Bd., 935 F.2d 230, 233 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard

set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." Wilson, *supra*, 284 F.3d at 1226.  Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself."  Elam, 921 F.2d at 1216.  The court has held that "[p]ain alone can be disabling, even when its existence is unsupported by objective evidence." Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (citing Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987)). However, the absence of evidence to support symptoms of the severity claimed is a factor that can be considered.  *Id.*; Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, "[i]f the Commissioner refuses to credit [subjective testimony of the Plaintiff concerning pain] he must do so explicitly and give reasons for that decision. . . .  Where he fails to do so we hold as a matter of law that he has accepted that testimony as true." MacGregor v. Bowen, 786 F.2d at 1054; Holt v. Sullivan, 921 F.2d at 1223.  "Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court.  The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [plaintiff's] medical condition as a whole." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal quotations and citations omitted).  The reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991).

Underlying the Hand standard is the need for a credibility determination concerning a plaintiff's complaints of pain.  Those complaints are, after all, subjective.  "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." Scharlow v. Schweiker, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective

symptoms and complaints").[10]   People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain.  This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ."  Hand, supra, at 1548-49.  It is within the ALJ's "realm of judging" to determine that "the quantum of pain [a claimant] allege[s] [is] not credible when considered in the light of other evidence."  Arnold v. Heckler, 732 F.2d 881, 884  (11th Cir. 1984).   Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that.  The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief, is the basis for the ALJ's credibility determination.

Here, the ALJ specifically found that "although the claimant does have an impairment which could reasonably give rise to some pain, there is no objective medical evidence that his condition is such as to produce pain of such severity as to preclude all forms of work activity" (Tr. 19).  The ALJ may properly find subjective complaints regarding pain not credible if he articulates reasons that are supported by the record.  See Jones v. Department of HHS, 941 F.2d 1529 (11th Cir. 1991). The ALJ articulated the inconsistencies on which he relied in discrediting Plaintiff's subjective complaints.  Specifically, the ALJ noted Plaintiff's ability to ride in a car without stopping for a period of time consistent with an ability to perform sedentary work[11] (Tr. 18).  He also noted that Plaintiff's indicated pain level is far greater than that "assessed" by Dr. Williams and "observed" by Dr. Szmurlo.  A review of Dr. Williams' report supports this conclusion of the ALJ.  Dr. Williams noted, among other things, Plaintiff's ability to ambulate under his own power without difficulty; that fact that Plaintiff should have the normal work-related ability to sit, handle objects

---

[10]Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit.  Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

[11]20 C.F.R. § 404.1567 defines sedentary work as follows: (a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

and travel; Plaintiff's use of a cane that appeared unnecessary; and Plaintiff's ability to mount and dismount the examination table without difficulty.  Dr. Szmurlo's report, too, supports this conclusion of the ALJ.  Although Dr. Szmurlo observed that Plaintiff "ambulates very slowly with [the] assistance of a cane," he also noted that Plaintiff "does not exhibit any excessive pain behaviors" (Tr. 129).  Because the ALJ's credibility finding is supported by substantial evidence on the record as a whole, his finding should be affirmed.  *See* Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992); Walker v. Bowen, 826 F.2d 996, 1004 (11th Cir. 1987).

       C.        Use of the Grids

Plaintiff contends the ALJ erred in failing to obtain the testimony of a VE regarding the existence of other work consistent with his RFC.

Once the ALJ finds that a claimant cannot return to his or her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.  Foote, 67 F.3d at 1558; Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines, also known as the grids.  Foote, 67 F.3d at 1558.  Exclusive reliance on the grids is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00 (e); Foote, 67 F.3d at 1559; Heckler v. Campbell, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, i.e., impairments that place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills."  Walker v. Bowen, 826 F.2d 996, 1002-03 (11th Cir. 1987).  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  Foote, 67 F.3d at 1559; Chester v. Bowen, 792 F.2d 129, 132 (11th Cir. 1986); *see also* MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986) (when non-exertional limitations are alleged, the preferred method of demonstrating that the claimant can

perform specific work is through the testimony of a vocational expert).  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  *See* Allen, 880 F.2d at1202; Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981), *overruled on other grounds*.

Plaintiff contends use of the grids was improper due to the presence of significant nonexertional limitations (i.e., pain).  Although use of the grids may be inappropriate in cases involving nonexertional impairments, such as pain, *see* Cowart v. Schweiker, 662 F.2d 731, 736 n.1 (regulations do not apply in cases where claimant alleges nonexertional kinds of impairments), here Plaintiff's allegations of pain were properly discredited by the ALJ.  Where the ALJ determines that Plaintiff has either no nonexertional impairments or insignificant nonexertional impairments that do not limit his ability to perform other work identified by the grids, the ALJ may use the grids.  *See* 20 C.F.R. § 404.1569.  Thus, use of the grids was proper.

Plaintiff has failed to show that the ALJ erred in making his findings, or that any other ground for reversal exists.  Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida this 10th day of August, 2005.


/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Any objections to these proposed recommendations must be filed within ten days after being served a copy hereof.  A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636;** United States v. Roberts, **858 F.2d 698, 701 (11th Cir. 1988).**